IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | |
|---|---|
| Charles Street,<br><br>            Plaintiff,<br><br>   v.<br><br>Northrop Grumman Ship Systems, Inc.,<br><br>            Defendant. | No. 1:06-cv-00829-LG-RHW<br><br>**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND DAMAGES**<br><br>(Civil Rights-Employment)<br><br>Jury Trial Demanded |

**PRELIMINARY STATEMENT**

1. This action seeks injunctive and declaratory relief to prevent continuing, systemic, and unjustified race discrimination by the employer, NORTHROP GRUMMAN SHIP SYSTEMS, INC. ("NGSS"), with regard to the retention, terms and conditions of employment, treatment, and promotion and transfer of Black employees at NGSS, including severe, pervasive, and ongoing harassment of Black employees through longstanding maintenance of a racially hostile work environment. In addition to injunctive and declaratory relief, and all other available equitable relief, plaintiff seeks compensatory and punitive damages.

**JURISDICTION**

2. This suit is authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964, *as amended*, 42 U.S.C. §§ 2000e *et seq*. ("Title VII"); and Civil Rights Act of 1866, 42 U.S.C. § 1981 ("1981"). Jurisdiction of this Court is invoked pursuant to 42 U.S.C. § 2000e-5(f), 28 U.S.C. §§ l343 (3)&(4); 28 U.S.C. § 1331 and 28 U.S.C. § 1337. Plaintiff seeks declaratory relief pursuant to 28 U.S.C. §§ 2201 & 2202.

Plaintiff Charles Street's Complaint for
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00829-LG-RHW

1

## PARTIES

3. CHARLES STREET is a Black employee of NGSS who has been employed by NGSS for over 30 years.

4. NORTHROP GRUMMAN SHIP SYSTEMS, INC. is a business that is engaged in the construction and refurbishing of seagoing vessels, both military and civilian. It is located in Pascagoula, Mississippi. It is an employer for purposes of Title VII. On the basis of information and belief, plaintiff alleges that NORTHROP GRUMMAN SHIP SYSTEMS, INC. is a successor in interest to INGALLS SHIPBUILDING COMPANY.

5. NGSS has received numerous contracts and substantial income from agencies and departments of the Federal Government, and because of the receipt of said contracts and income it is subject to Title VI of the Civil Rights Act of 1964, as amended. NORTHROP GRUMMAN SHIP SYSTEMS, INC., and its predecessor, INGALLS SHIPBUILDING COMPANY, therefore are, and have been, a federal contractor at all times relevant.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

6. All conditions precedent to jurisdiction pursuant to section 706 of Title VII of the Civil Rights Act of 1964, as amended, have been complied with to wit: an appropriate charge of employment discrimination has been filed with the Equal Employment Opportunity Commission, and a notice of right to sue was issued by the Equal Employment Opportunity Commission.

7. Plaintiff has filed a timely complaint based on the time limits contained in section 706 of Title VII of the Civil Rights Act of 1964, as amended.

8. On or about December 20, 2000, the Equal Employment Opportunity Commission issued a determination finding reasonable cause to believe that a racially hostile work environment existed at NGSS.

9. Attempts at conciliation regarding the finding of a racially hostile work environment, which was and is statutorily required, failed.

Plaintiff Charles Street's Complaint for  
Injunctive and Declaratory Relief and Damages  
No. 1:06-cv-00829-LG-RHW

2

## **PROCEDURAL BACKGROUND PRECEDING THIS COMPLAINT**

10. An initial complaint was filed in the United States District Court for the Southern District of Mississippi on March 21, 2001, in which eleven (11) persons, named as representative plaintiffs, and the organization, Ingalls Workers for Justice, alleged class-wide discrimination at NGSS on the basis of race. The case was assigned a case number of 1:01-CV-111(G)(R).

11. A First Amended Complaint was filed on April 26, 2001 in the initial case, additionally alleging maintenance of a racially hostile work environment at NGSS.

12. A Complaint in Intervention was filed on February 13, 2003 in the initial case, necessitated by the Court's dismissal of the following causes of action and parties from the First Amended Complaint on February 28, 2002:

   a) Dismissal of the class action allegations seeking compensatory and punitive damages;

   b) Dismissal of the claim for relief alleged pursuant to Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, *et seq.*;

   c) Dismissal of the claim for relief alleged pursuant to the Thirteenth Amendment to the U.S. Constitution;

   d) Dismissal of organizational plaintiff INGALLS WORKERS FOR JUSTICE;

   e) Dismissal of defendant LITTON INDUSTRIES; and

   f) Dismissal of defendant NORTHROP GRUMMAN.

13. A Second Amended Complaint was filed on April 7, 2003 in the initial case.

14. On or about March 16, 2004, the initial case was reassigned to the Honorable Louis Guirola, Jr., District Court Judge; on December 30, 2004, the Honorable Robert H. Walker, Magistrate Judge, was assigned to be the Magistrate Judge for the initial case.

15. On August 17, 2006, Magistrate Judge Walker entered an order entitled, "Order Requiring Separate Complaints," which, *inter alia*, severed the plaintiffs' claims from one another, and required the filing of new complaints and assignment of new case numbers for each of the individual plaintiffs in Case No. 1:01-CV-111(LG)(RHW).

Plaintiff Charles Street's Complaint for
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00829-LG-RHW

3

16. At some point during the period of time from August 17, 2006 through September 7, 2006, plaintiff CHARLES STREET's severed action was assigned the case number of 1:06-cv-00829-LG-RHW.

## FACTUAL STATEMENT

## RACIAL DISCRIMINATION GENERAL ALLEGATIONS

17. The defendant, NGSS, has intentionally pursued and continues to pursue employment policies and practices that constitute systemic discrimination against plaintiff and other Black employees and that deprive or tend to deprive such persons of equal employment opportunities within NGSS.  NGSS has intentionally implemented these policies and practices, among other ways, as follows:

   a) By failing to treat Blacks on an equal basis with Whites.

   b) By using selection devices for promotions that have an adverse impact on Blacks, are not job related and have never been validated pursuant to the Uniform Guidelines on Employee Selection Procedures, and have more adverse impact than equally valid alternatives.

   c) By using evaluation procedures in the consideration of employees for promotions that discriminate against or illegally exclude Black employees from consideration.

   d) By failing to provide Black employees with equal opportunities for advancement within the company because of their race.  Black employees are denied promotions despite their qualifications and years on the job.  It is not uncommon for a Black employee to be denied a promotion at NGSS in an area she or he has worked in for twenty years and then be assigned to train a White employee with less seniority.

   e) By maintaining a double standard in the granting of promotions to White employees vis à vis Black employees.  Practices including cronyism, nepotism, word-of-mouth recruitment, failure to post or advertise employment opportunities, and/or the placement of White employees in acting positions have

Plaintiff Charles Street's Complaint for
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00829-LG-RHW

4

inured to the determent of Black employees historically.

f) By restricting access to employment opportunities for Black employees and maintaining a workforce in which its supervisory and management personnel has been and continues to be predominately White.

g) By engaging in a policy in which positions are actually filled even before they may be posted or advertised as an available position.

h) By demoting Black employees at a disproportionate rate as compared to White employees.

i) By retaliating against Black employees after they have complained or challenged, in any way, the discriminatory policies, procedures, and practices that permeate the work environment at NGSS.

j) By denying Black employees opportunities to go on trips or sea trials where they would be able to earn substantial amounts of overtime.

k) By maintaining a practice of "job steering," resulting in Black employees being assigned to, and then denied the opportunity to move out of, dangerous, dirty, and generally less desirable work areas because of their race.

l) By instituting and allowing the continuance of a racially hostile work environment for Black employees.

18. This pattern or practice denies the full exercise of rights secured by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.*, and the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981.

19. NGSS has been aware that its actions with regard to the treatment of Black employees were and are in violation of federal statutes prohibiting discrimination on the basis of race.

## SPECIFIC CLAIMS FOR RELIEF
## TITLE VII AND § 1981

20. Plaintiff incorporates paragraphs 1 through 19, as though fully set forth herein.

Plaintiff Charles Street's Complaint for
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00829-LG-RHW

5

21. Plaintiff has never been promoted in spite of plaintiff's 30-plus years at NGSS. Plaintiff has inquired about, and has applied for, promotive positions on numerous occasions. Plaintiff was qualified for the positions for which he applied, and about which he inquired, but has never been selected. The means used to determine plaintiff to be unqualified have never been validated pursuant to the Uniform Guidelines on Employee Selection Procedures. This includes the following instance:

   a) In 2001, plaintiff applied for burner foreman, a position for which plaintiff was qualified, and plaintiff was not selected because of his race.

22. Plaintiff has worked for 30 years in one or more of the departments at NGSS utilizing a position entitled "leaderman" or "half-hat." Based upon information and belief, plaintiff hereby alleges that no formal means of applying for the position of "leaderman" or "half-hat" at NGSS exist. Plaintiff has made it known that he has been interested in being selected for the position of "leaderman "or "half-hat," including in 1997, 1987-88, and 1982, when plaintiff inquired about a work leaderman job. Plaintiff, however, has never been selected for the position in spite of his 30 years at NGSS. Plaintiff has not been informed in any way that he was not qualified for the position of "leaderman" or "half-hat." The means used to determine that plaintiff would not be selected for a position, for which he was and is qualified, have never been validated pursuant to the Uniform Guidelines on Employee Selection Procedures.

23. Plaintiff has observed both that Black employees are not promoted in spite of their qualifications and seniority as well as the lack of qualifications of White employees who have been promoted, and, therefore, plaintiff has not applied for promotive positions for which he was qualified, and plaintiff has never been selected for promotion to any such position. The means used to determine that plaintiff would not be selected for a position, for which he was and is qualified, have never been validated pursuant to the Uniform Guidelines on Employee Selection Procedures.

24. Plaintiff has been laid off at times during which, on information and belief, similarly situated White co-workers with fewer years of seniority were not laid off. Plaintiff has been laid

Plaintiff Charles Street's Complaint for　　　　　　　　　　　　　　　　　　　　　　　6
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00829-LG-RHW

off on the following occasions, and on information and belief alleges that these layoffs were discriminatory:

    a) In or around March 4, 1988, plaintiff was laid off from the position of welder for approximately two months; he was reinstated into welding, Department 9, on or about May 2, 1988. Plaintiff is informed and believes that White co-workers with fewer years of seniority were not off at that time.

    b) In or around December 10, 1982, plaintiff was laid off from the position of welder for approximately 20 months; he was reinstated into welding, department 9, on or around August 24, 1984. Plaintiff is informed and believes that White co-workers with fewer years of seniority were not laid off at that time.

    c) In or around March 21, 1980, plaintiff was laid off from the position of cableman for approximately 4 months; he was reinstated and transferred into welding, department 9, on or around July 28, 1980. A White co-worker with fewer years of seniority was not laid off at that time. Plaintiff was told that he was laid off because the White employee was certified to pack trancers; however, plaintiff had not been offered training to be certified.

25. Plaintiff has received less compensation than similarly situated White co-workers for doing the same job. Plaintiff has been made aware of the discrepancy by seeing the check stub of a white worker and by noticing that white employees were given overtime hours. This includes the following instances:

    a) In late 2000, plaintiff observed that similarly situated White co-workers were being given overtime hours, while he was not given these hours.

    b) In the late 1990s, plaintiff noticed that similarly situated White co-workers were being given overtime hours, while he was not given these hours.

    c) Beginning in the 1990s, plaintiff began performing the functions of the position of work leaderman, but did not get paid as a work leaderman.

    d) In the late 1980s, plaintiff compared his paycheck to that of a similarly situated

Plaintiff Charles Street's Complaint for
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00829-LG-RHW

7

White co-worker, and saw that the White worker got paid more.

26. Plaintiff has made his supervisor(s) aware that he desired to be chosen to participate in sea trials.  However, prior to this lawsuit being filed, he had never been selected to participate in any sea trials in spite of being qualified to be chosen, while his similarly situated White colleagues have overwhelmingly been selected to do so.  Furthermore, the selection process for participating in sea trials has never been validated pursuant to the Uniform Guidelines on Employee Selection Procedures.  This includes following instance:

    a) In 2000, plaintiff was prepared to go on a sea trial, but was told that day that without explanation that he would not be going; White employees appeared to have been substituted in his place.

27. Plaintiff has made his supervisor(s) aware that he desired to receive certain training, including certification in aluminum and certification in packing trancers.  However, he has never been selected for the requested training, in spite of being qualified to be chosen, while his similarly situated White colleagues have overwhelmingly been selected to do so.  Furthermore, the selection process for obtaining training has never been validated pursuant to the Uniform Guidelines on Employee Selection Procedures.  This includes the following instance:

    a) In the late 1980s or early 1990s, plaintiff was denied training to become certified in aluminum.

28. Plaintiff has been subjected to racial job tracking that assigns Black employees at NGSS at a disproportionate rate as compared to White employees to the most undesirable, dirtiest, and dangerous employment environments in the workplace.  Plaintiff has been assigned to such employment environments in the following instances:

    a) From December 1997 to the present, plaintiff has been working in Department 21, the pipe department.  While in pipe, plaintiff has been routinely assigned to the least desirable jobs, including working in the bilge of the ship and the inner bottom.

    b) Plaintiff was assigned to Department 9, hull, for most of his service between 1976

Plaintiff Charles Street's Complaint for
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00829-LG-RHW

8

and December 1997.  Hull is one of the dirtiest and most dangerous assignments. While in hull, plaintiff was assigned to the least desirable jobs such as working in the inner bottom of the ship.

c) While working in painting in 1978, plaintiff was assigned to run the rug machines down in the bottom.  Plaintiff never saw a White worker down in the bottom.

29. Plaintiff has been subject to the practice of forcing Black employees disproportionately as compared to White employees to work with injuries, without reasonable accommodation of disabilities, or without provisions being made for medically imposed work restrictions.  This includes the following instances:

a) In 1991, plaintiff hurt his knee on the job.  The shipyard doctor told plaintiff that it was a bruise, and plaintiff continued to work, with crawling, for three months. In fact, plaintiff had a torn knee and a blood clot that could have been fatal.  After knee surgery, plaintiff was given full-duty work.  Only after the injury was re-aggravated was plaintiff given light duty work.

b) In early 1988, plaintiff severely injured his elbow on the job.  The injury was not correctly diagnosed for three months.  After surgery and a leave of absence, plaintiff was returned to given full-duty work.  He was not given light duty.

c) Plaintiff was diagnosed with carpal tunnel in 2006 as a result of the significant amount of welding work he has done.

30. Plaintiff has been subjected to a hostile work environment based on plaintiff's race. Plaintiff has been exposed to offensive racially derogatory writings, depictions, and/or graffiti on a constant basis in a number of places at NGSS.  NGSS knows or should have known of the presence of offensive racially derogatory writings, depiction, and/or graffiti in its workplace, but has failed to take steps to prevent or correct promptly its occurrence.  Plaintiff has complained about being subjected to the offensive racially derogatory writings, depictions, and/or graffiti, but the response has always been insufficient to remedy the situation.  Plaintiff has not complained about each and every instance of having been exposed to the offensive racially

Plaintiff Charles Street's Complaint for
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00829-LG-RHW

9

derogatory writings, depictions, or graffiti because plaintiff believed it would be useless so to do, given the historical lack of sufficient response on the part of NGSS. This includes the following instances:

    a) For 30 years, through 2006, plaintiff has seen racist graffiti in the restrooms at the shipyard. A few examples of the racist graffiti plaintiff has seen include: after 2003, plaintiff saw graffiti saying that all niggers need to go back to Africa; after 2003, plaintiff saw graffiti saying that the hurricane should kill all black people; after 2003, plaintiff saw racist graffiti about sexual matters, including pictures of body parts and of Black women with the boss; plaintiff saw a drawing of Black people with nooses around their necks, saying that a nigger will never be boss; plaintiff saw a picture of a hooded figure near a picture of a Black person with a noose around his neck, with the caption, "The only good nigger is a dead nigger"; and plaintiff saw a drawing of a slave ship with Black figures hanging from nooses.

    b) Plaintiff complained about racist graffiti as recently as May 2006. He told management that they needed to do something about the graffiti, because there was writing on the wall saying something to the effect of "nigger never be boss man." The response to plaintiff's complaints has been insufficient to remedy the situation.

    c) In 2002, plaintiff complained to a supervisor about the graffiti in a safety meeting. The supervisor said he would take care of it; however, the response has not been sufficient to remedy the situation.

    d) When plaintiff saw the picture of a hooded figure near a picture of a black person with a noose around his neck, with the caption, "The only good nigger is a dead nigger," he did not complain, because he thought that complaining would be futile.

    e) Anyone who uses the restrooms, including supervisors, should have noticed the

Plaintiff Charles Street's Complaint for    10
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00829-LG-RHW

graffiti.  Plaintiff has been in the restroom at the same time as numerous white supervisors.

31. Plaintiff has been subjected to a hostile work environment based on plaintiff's race. Plaintiff has been exposed to White supervisory personnel and White non-supervisory employees using the term "nigger" or other racial epithets, including in jokes, in a number of places at NGSS.  NGSS knows or should have known about use of the term "nigger" and other racial epithets by White supervisory personnel and White non-supervisory employees, but has failed to take steps to prevent or correct promptly its occurrence.  Plaintiff has not complained about each and every instance of having heard this or other racial epithets because plaintiff believed it would be useless so to do given the historical lack of sufficient response on the part of NGSS. This includes the following instances:

a) Over the years, including after 2003, and on occasions too numerous to recount or to remember, plaintiff has seen the word "nigger" in graffiti in the restrooms. Plaintiff told management that they needed to do something about the graffiti, because there was writing on the wall saying something to the effect of "nigger never be boss man."  The response to plaintiff's complaints has been insufficient to remedy the situation.

b) In 2001, plaintiff heard a pipefitter call a black electrician a "nigger."

c) In the 1980s, plaintiff heard a White supervisor named Thompson address a Black chipper "nigger."  Thompson said, "Nigger, why don't you go down, get back in that tank?"

d) When plaintiff started working as a welder, a White supervisor exclaimed, in earshot, "here is a Black, they started him in first class."

32. Plaintiff has been subjected to a hostile work environment based on plaintiff's race. Plaintiff has been exposed to nooses in a number of places at NGSS.  NGSS knows or should have known about the presence of nooses, both actual and depicted in drawings, at its workplace, but has failed to take steps to prevent or correct promptly its occurrence.  Plaintiff has not

Plaintiff Charles Street's Complaint for
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00829-LG-RHW

11

complained about each and every instance of having seen nooses at NGSS because plaintiff believed it would be useless to do so, given the historical lack of sufficient response on the part of NGSS. This includes the following instances:

    a) On occasions too numerous to recall, plaintiff has seen drawings of nooses in the racist graffiti on the wall. One drawing depicted Black people with nooses around their necks, with wording stating that niggers would never be boss. Another drawing depicted a slave ship with Black figures lynched with nooses around their necks. Plaintiff incorporates paragraph 31 as though set forth fully herein.

    b) Plaintiff saw the picture of a hooded figure near a picture of a Black person with a noose around his neck, with the caption, "The only good nigger is a dead nigger." He did not complain, because he thought that complaining would be futile.

    c) Anyone who uses the restrooms, including supervisors, should have noticed the nooses drawn on the walls. Plaintiff has been in the restrooms at the same time as numerous white supervisors.

33. Plaintiff has been subjected to a hostile work environment based on plaintiff's race. The hostile work environment comprises and/or has culminated in the adverse treatment described in paragraphs 20 through 29, incorporated as though fully set forth herein.

34. Plaintiff has been subjected to a hostile work environment based on plaintiff's race. Plaintiff has been and is aware of the fact of presence of offensive racially derogatory writings, depictions, and/or graffiti; ubiquitous use of the word "nigger" and other racist epithets; and nooses at NGSS.

35. Plaintiff has been subjected to a hostile work environment based on plaintiff's race. Plaintiff has been and is aware of the fact that Black employees have not been provided equal opportunity with regard to upward job mobility.

36. The hostile work environment based on race to which plaintiff has been exposed is of a continuing and ongoing nature and constitutes a continuing violation of Title VII and § 1981.

Plaintiff Charles Street's Complaint for
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00829-LG-RHW

12

37. NGSS has failed to take steps to remedy and correct promptly the harassing behavior occurring in its workplace.  NGSS has failed to promulgate, disseminate, and enforce adequately an anti-harassment policy and failed to provide sufficient training to its employees regarding same.  NGSS has failed to respond sufficiently to complaints regarding the harassment as set forth in paragraphs 30 through 36, incorporated as though fully set forth herein.

## APPROPRIATENESS OF EQUITABLE RELIEF

38. Plaintiff will suffer irreparable injury if the declaratory and injunctive relief requested herein is not granted, because NGSS will make employment decisions on the basis of the discriminatory procedures and practices described herein or will not remediate the racially hostile work environment that exists in its workplace. If NGSS is not enjoined from engaging in discriminatory employment practices, plaintiff will be deprived of career opportunities, which plaintiff otherwise would have been able to pursue, but for NGSS's discriminatory employment practices.

39. No plain, adequate, or complete remedy at law is available to plaintiff.  Monetary relief cannot adequately compensate the loss of promotional opportunities, experience, and careers with NGSS.  Similarly, monetary relief cannot adequately compensate the continued subjection to a racially hostile work environment.

40. Unless restrained by order of this Court, NGSS will continue to pursue policies and practices, which are the same as, or similar to those alleged above.

## FIRST CLAIM FOR RELIEF

41. Plaintiff refers to and incorporates by reference the allegations contained in paragraphs 1 through 40 and further alleges for a first claim for relief as follows:

42. Defendant has intentionally failed to provide plaintiff equal employment opportunities by discriminating against plaintiff on the basis of race with regard to treatment and promotions at NGSS.  NGSS's unequal treatment of plaintiff and other Black employees and its intentional failure to remedy such unequal treatment violates plaintiff's right to be free from such discrimination under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e

Plaintiff Charles Street's Complaint for
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00829-LG-RHW

13

*et seq*.

## SECOND CLAIM FOR RELIEF

43. Plaintiff refers to and incorporates by reference the allegations contained in paragraphs 1 through 42 and further alleges for a second claim for relief as follows:

44. Defendant has intentionally failed to provide plaintiff equal employment opportunities by discriminating against plaintiff on the basis of race with regard to treatment and promotions at NGSS. NGSS's unequal treatment of plaintiff and other Black employees and its intentional failure to remedy such unequal treatment violates plaintiff's right to be free from such discrimination under the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981.

## THE APPROPRIATENESS OF COMPENSATORY AND PUNITIVE DAMAGES

45. Defendant NGSS has caused plaintiff emotional distress and mental anguish as a proximate result of its illegal practices, and plaintiff is entitled to compensatory damages pursuant to the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

46. Similarly, defendant NGSS was aware that its actions with regard to plaintiff were in violation of federal statutes prohibiting discrimination on the basis of race, and therefore, plaintiff is entitled to punitive damages.

## PRAYER

WHEREFORE, plaintiff prays that this Court:

    a) Declare pursuant to 28 U.S.C. §§ 2201 & 2202 the employment practices set forth in paragraphs 17 through 37 to be unlawful and in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.* and the Civil Rights Acts of 1866, as amended, 42 U.S.C. § 1981;

    b) Adjudge, decree, and declare that the practices of NGSS complained of herein are violative of the rights secured to plaintiff by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* and the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981;

    c) Issue a preliminary and permanent injunction enjoining NGSS, its agents,

Plaintiff Charles Street's Complaint for  
Injunctive and Declaratory Relief and Damages  
No. 1:06-cv-00829-LG-RHW

14

    successors, employees, attorneys, and those acting in concert with it from engaging in each of the unlawful practices set forth in paragraphs 17 through 37 and from continuing other practices found to be in violation of applicable law;

d) Direct NGSS to take such affirmative steps as are necessary to ensure that the effects of its unlawful employment practices are eliminated;

e) Enter a permanent mandatory injunction requiring that NGSS adopt employment practices in conformity with the requirements of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* and the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981;

f) Require that NGSS submit a comprehensive plan detailing how it plans to ensure fair and equitable job advancement opportunities for Black employees. The plan should also outline steps to be taken to ensure that jobs available remain open until the posting period has expired;

g) Require that NGSS institute a policy that affords equal opportunities for training and development. The policy should include the requirement that such training opportunities must be announced to the entire workforce as well as a procedure consisting of a rotation scheme and other procedures to ensure that training for job advancement is afforded to all those who are interested;

h) Grant equitable relief, including, but not limited to, back pay, sick pay, vacation pay, disability benefits, and seniority rights to plaintiff;

i) Grant such punitive, general, and special damages as proved at trial;

j) Award plaintiff the costs and litigation expenses of this action and reasonable attorneys' fees as provided for in section 706(k) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5(k), and the Civil Rights Attorneys Fees Award Act of 1976, as amended, 42 U.S.C. § 1988; and

k) Grant such other and further relief as may be just and proper.

**<u>DEMAND FOR JURY TRIAL</u>**

Plaintiff Charles Street's Complaint for　　　　　　　　　　　　　　　　　　　　　　　　　　　　15
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00829-LG-RHW

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, plaintiff hereby demands a trial by jury.

| | |
|---|---|
| Dated:  October 6, 2006 | SANDRA JARIBU HILL, Esq.<br>Mississippi Workers Center for<br>Human Rights<br><br>WILLIAM C. MCNEILL, III, Esq.<br>The Legal Aid Society-Employment<br>Law Center<br><br>Counsel for Plaintiffs<br><br><br>By:    /s/ William C. McNeill, III<br>          WILLIAM C. McNEILL, III, Esq. |

William C. McNeill, III, Esq., MS Bar No. 42867, *Pro Hac Vice*
Denise M. Hulett, Esq., MS Bar No. 44672, *Pro Hac Vice*
Shelley A. Gregory, Esq., MS Bar No. 43443, *Pro Hac Vice*
The Legal Aid Society – Employment Law Center
600 Harrison Street, Suite 120
San Francisco, California  94107
(415) 864-8848

Sandra Jaribu Hill, Esq., MS Bar No. 10684
Mississippi Workers Center for Human Rights
213 Main Street
P.O. Box 1223
Greenville, Mississippi  38702-1223
(662) 334-1122

Plaintiff Charles Street's Complaint for                                                                                                            16
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00829-LG-RHW

## CERTIFICATE OF SERVICE

I hereby certify that on October 6, 2006, I electronically filed the foregoing with the Clerk of the Court using the ECF System which sent notification of such filing to the following: Paul B. Eason; Maria Candace Burnette; Timothy W. Lindsay; Stephen A. Brandon.

I hereby certify that I have mailed by United States Postal Service the documents to the following non-ECF participants:

Tammi Liddell
3836 Prentiss St.
Moss Point, MS  39563

Willie B. Richmond
1608 Timberlane Road
Gautier, MS  39553

Edna M. Tubbs
P.O. Box 501
Escatawpa, MS  39552

  /s/ Laurel Kapros
Laurel Kapros

Plaintiff Charles Street's Complaint for
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00829-LG-RHW

17